CONGREGATION EMANU-EL OF THE CITY OF NEW YORK, Plaintiff,
*v.* THE CITY OF NEW YORK, Defendant.

Supreme Court, New York County, February 20, 1934.

*James Marshall*, for the plaintiff.

*Paul Windels, Corporation Counsel [Samuel Wittlin* of counsel], for the defendant.

COLLINS, J. This action seeks to cancel taxes for the years 1932 and 1933, levied upon real property of the plaintiff and known as 13 East Sixty-fifth street.

The basis of the demanded relief is that the property is of a character exempted from taxation under section 4, subdivision 7 (now 6), of the Tax Law.

The facts are free from dispute. The plaintiff, a domestic religious corporation, assembled several parcels in 1926 for the

purposes and uses of the congregation. On plots adjoining the particular building in question was erected a synagogue and social service house.

According to the agreed statement of facts, 13 East Sixty-fifth street is a six-story building, the first three floors of which " were occupied and used during the period involved in this action by the Union of American Hebrew Congregations," a foreign corporation, free of rent, and to effectuate the purposes of the Union, which are akin to, and allied with, the purposes of the plaintiff. The plaintiff is a member of the Union and contributes thereto. The remaining three floors are occasionally used by the plaintiff, but are constantly available to and suitable for plaintiff's uses. No part of the premises is utilized for any purpose other than that for which the plaintiff was created and exists. The building produces no income or profit whatsoever; no claim is made that the premises are utilized for commercial purposes.

The city has assigned two grounds for denying the plaintiff's claim to exemption: *First*, that the premises are wholly or partially occupied by a foreign corporation, and, *second*, that the entire building is not exclusively used for the plaintiff's purposes.

Under subdivision 7 (now 6) of section 4 of the Tax Law there is " exempt from taxation * * * the real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, * * * purposes, * * * and used exclusively for carrying out thereupon one or more of such purposes." Real property in the process of improvement or where improvement " is in good faith contemplated by such corporation or association " likewise is exempt.

The applicant for exemption here is not a foreign corporation but a domestic corporation, admittedly engaged in religious and charitable pursuits. The plaintiff is " subject to visitation and control by the laws of this State." (*People ex rel. Corporation of Presiding Bishop of Church of Jesus Christ, etc.,* v. *Purdy,* 184 App. Div. 915.) The law does not require that the property be *used* exclusively by the domestic religious corporation; it is the *ownership* by foreign corporations which does not come within the scope of the exemption. The circumstance that one of the agencies employed by the plaintiff to execute upon the premises its charitable and religious purposes is a foreign corporation does not lift the property from the exempt class.

Were the city's contention upheld, many of the buildings now enjoying exemption would lose (*pro tanto* at least) the privilege if the owners allowed, in furtherance of their aims, a foreign cor-

poration to occupy, without rent or gain, a small fraction of the premises.

"Exemptions from taxation are not favored and are to be strictly construed. They will not be sustained unless such clearly appears to have been the intent of the Legislature. An exemption from taxation must be expressed in clear and unambiguous language, and appear to be indisputably within the intention of the Legislature." (*People ex rel. Andrews* v. *Cameron*, 140 App. Div. 76; affd., 200 N. Y. 585.) But the design and spirit of the law must not be excluded from consideration. Tax laws are not immune from the rule of reasonable construction.

Since I am convinced that occupation of a portion of the premises by the Union is in furtherance of the plaintiff's purposes, and since the policy of the State is to foster and aid such purposes by exempting from taxation property used therefor, I conclude that the use to which the first three floors were put does not vitiate the exempt character of the premises.

Nor can I adopt the city's construction of the requirement that the property be "used exclusively for carrying out thereupon one or more of such purposes." The phrase has reference not to the *space* occupied but the *use* to which the property, *as a whole*, is put or made available. If a portion of the property actually be used for "one or more of the purposes of the incorporation" (*People ex rel. Y. M. A.* v. *Sayles*, 32 App. Div. 197; affd., 157 N. Y. 677), and the remainder be temporarily unoccupied, the building, as a whole, "is used exclusively for carrying out thereupon one or more of such purposes." If, however, a portion of the premises be employed for carrying out thereupon one or more of the purposes of the incorporation and another portion for foreign purposes, the entire building would not be used exclusively for one or more of the purposes of the corporation. In the former case the building would be exempt from taxation; in the latter the property, or the portion used for foreign purposes, would be subject to taxation.

A church or synagogue or school does not shed its exempt character during the summer because of idleness. Constant daily use is not contemplated or compelled. *When* used, the use must be for the purpose which the law recognizes as earning exemption. The property here was available for, and susceptible to, use for plaintiff's purposes; potentially, if not actually, it was in use.

Were the upper floors utilized for the storage of the plaintiff's files or books, or otherwise ostensibly availed of, such application would meet the city's objection. Yet, it would encourage subterfuges and stratagems and convert the law into a farce to compel

pretended use merely to escape the extreme construction urged by the city.

In *Board of Foreign Missions* v. *Board of Assessors* (244 N. Y. 42), cited by the city, " the relator had made use of them [parcels claimed to be exempt] for purposes other than those referred to in section 4 of the Tax Law, * * *. This user, however, took from it the right of exemption." In *People ex rel. D. K. E. Society* v. *Lawler* (74 App. Div. 553; affd., 179 N. Y. 535) it was found that the building, as a whole, was not " used exclusively for carrying out thereupon one or more of such purposes." In *People ex rel. Blackburn* v. *Barton* (63 App. Div. 581) the land for which exemption was claimed was not only unused but " not cleared, but is covered with different kinds of timber. It is put to no use, but lies idle." Virtually the same situation appeared in *People ex rel. Missionary Sisters* v. *Reilly* (85 App. Div. 71; affd., 178 N. Y. 609). The property here, however, is both improved and used.

Support for the plaintiff's interpretation of the law is found in *People ex rel. Buffalo B. P. Assn.* v. *Stillwell* (190 N. Y. 284); *Hope Cemetery Association* v. *Rose* (117 Misc. 457); *Y. W. C. A. of Brooklyn* v. *City of New York* (137 id. 321; affd., 227 App. Div. 742; affd., 254 N. Y. 558).

Satisfied that the " exclusive use is the main test of exemption " (*People ex rel. Y. M. A.* v. *Sayles, supra*) has been met, my conclusion is that the plaintiff is entitled to judgment. Submit findings and judgment.